IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| United States of America,<br><br>v.<br><br>Michael Phillip Bourque | Crim. No. 4:02-cr-00336-TLW<br><br>**Order** |

This matter is before the Court on Defendant Michael Bourque's motion for a sentence reduction under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 173. For the reasons set forth below, Defendant's motion is denied.

## BACKGROUND

On March 27, 2002, a federal grand jury returned a three count Indictment charging Defendant with armed bank robbery and firearms offenses. PSR ¶ 1. On December 11, 2002, Defendant was found guilty by jury verdict as to all three counts. PSR ¶ 5. On October 29, 2003, a sentencing hearing was held in which Defendant was sentenced to a term of imprisonment of 7 years as to Count 2 consecutive to 25 years as to Count 4, for a total aggregate sentence of 32 years imprisonment. ECF Nos. 58, 59.

## APPLICABLE LAW

Absent certain exceptions, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of those exceptions is the compassionate release statute. That statute provides, in relevant part, as follows:

[T]he court, . . . upon motion of the defendant . . . , may reduce the term

1

> of imprisonment . . . after considering the factors set forth in section 3553(a) . . . , if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). "A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted." *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020).

The Sentencing Commission has issued a policy statement addressing compassionate release motions—§ 1B1.13. But prior to the passage of the First Step Act, compassionate release motions could only be filed by the BOP, so § 1B1.13 by its terms only applies to BOP motions. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020) (explaining the First Step Act's changes to the compassionate release statute). There is no corresponding policy statement addressing compassionate release motions filed by inmates. Thus, in *McCoy*, the Fourth Circuit held that, when considering an inmate's compassionate release motion, § 1B1.13 is not an "applicable policy statement[]." *Id.* at 284. But while § 1B1.13 may not directly apply to an inmate's motion, "it remains helpful guidance." *Id.* at 282 n. 7.

While § 1B1.13 may provide guidance, it is not an "applicable policy statement[]," so "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d. Cir. 2020)) (emphasis in original); *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). Ultimately, the determination of whether a case presents extraordinary and compelling reasons

warranting a sentence reduction is a question reserved to the sound discretion of the district court.

## DISCUSSION

In Defendant's motion, he seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A) on grounds that his medical conditions make him especially vulnerable to becoming seriously ill from COVID-19 and that he is more likely to contract COVID-19 in prison than outside of prison. He asserts that he suffers from heart disease, has a history of being overcome by pneumonia, suffers from hepatitis C, and has recently been diagnosed with cancer (cholangiocarcinoma). ECF No. 173 at 3. Defendant submitted medical records that verify these conditions. ECF No. 173-2 at 2-15.

The Government opposes his motion, conceding that Bourque's medical conditions[1] of cancer and heart disease are sufficient to establish "extraordinary and compelling reasons" under the statute, but arguing that the § 3553(a) factors strongly disfavor a sentence reduction. ECF No. 183 at 9. Although the Government concedes that extraordinary and compelling circumstances exist in light of Defendant's

---

[1] "Because the Government concedes that Bourque's medical conditions constitute extraordinary and compelling circumstances . . . it is not necessary to address his claim that subsequent changes in the law also present such circumstances." *See* ECF No. 183 at 9. "Therefore, for purposes of this response to Bourque's motion for reduction of sentence, the Government concedes that Bourque has shown extraordinary and compelling circumstances. *Id.* at 12-13.

3

terminal condition, it is noted that Bourque was offered a COVID-10 vaccine [2] and declined it, thus taking the position that the COVID-19 pandemic "provides little if any support for his claim that extraordinary and compelling circumstances exist which justify a reduction in his sentence." ECF No. 183 at 12; ECF No. 183-3. The Government outlines Defendant's instant offense conduct, his criminal history, and his disciplinary violations while incarcerated. ECF No. 183. The Government argues that those considerations weigh against release.

In particular, the Government points out Bourque's offense conduct: planning an armed bank robbery, driving the getaway car, pressuring the codefendant into participating in the robbery by threatening to kill the codefendant's wife and children. Furthermore, the Government highlights Bourque's conduct once he and the codefendant were stopped by law enforcement after the robbery, "Bourque reached for a gun intending to shoot the officer as he approached the car." *Id.* at 15.

The Government also notes that Bourque's violent criminal history is substantial, including two separate convictions for murder, as well as his inmate disciplinary history. "While incarcerated for the instant offense, Bourque assaulted and seriously injured a correctional officer by repeatedly stabbing the officer." *Id.*, ECF No. 179, at 1. The relevant findings of the Disciplinary Hearing Officer Report, ECF No. 183-1, are incorporated by reference below.

> It has been determined by this investigator, on June 15, 2013, at approximately 8:12 a.m., the B-4 Unit [O]fficer was assaulted with a sharpened

---

[2] The Government includes an exhibit dated July 26, 2021, documenting that BOP offered the Defendant the COVID-19 Moderna vaccine. *See* ECF No. 183-3 at 2.

4

homemade weapon by inmate Bourque[]. While reviewing recorded video from the VICONNET Video Surveillance System, this investigator observed inmate Bourque stab the Officer in the back as he attempted to open the Unit door for the morning move. The Officer falls to the floor and attempts to fight off inmate Bourque as he continues to repeatedly stab the Officer. Inmate Bourque stabs the Officer for approximately 30 seconds, and then starts pacing beside the Officer. . . Inmate Bourque paces by the Officer. . . then turns around to look at the officer and sees the Officer attempting to sit up. Inmate Bourque then runs toward the Officer, who is still on the floor and starts to stab him for approximately 15 seconds. Inmate Bourque stopped the assault when responding [s]taff members arrive to the Unit. Responding staff observed inmate Bourque throw down the blood[y] sharpened weapon as they entered the Unit. ECF No. 183-1 at 3.

Bourque was subsequently prosecuted in the Western District of Louisiana for this violent conduct, convicted of Assaulting a Federal Officer, and sentenced to 200 months' imprisonment to run consecutively to his release for the instant offense, bringing his total sentence of imprisonment to 731 months. *Id.* The Government also outlines Bourque's extensive history of other violations while incarcerated, including: Possessing a Dangerous Weapon (on six occasions), Destroying Property (multiple instances), Possessing Drugs/Alcohol/Intoxicants (multiple instances), Possessing Gambling Paraphernalia, Possessing Unauthorized Item (multiple instances), Possessing a Non-Hazardous Tool, Refusing Drug/Alcohol Test, Misusing Authorized Medication, and Being in Unauthorized Area and Failing to Stand Count.

In reply, Defendant reiterates his earlier arguments, admits that "every single thing that the Government said about Petitioner's conduct in the BOP is true except how Petitioner will act if those very same issues arise." *See* ECF No. 184 at 2. Defendant notes that he has not received any infractions in prison since 2013, and that if granted early release, that he has a place to live and employment with a

5

Christian ministry. *Id.* Bourque admits that he has "lived a very violent life" and is scheduled for release from prison at the "elderly age of 83 years old." *Id.* at 3.

In considering whether to reduce Defendant's sentence, the Court has carefully reviewed the Presentence Investigation Report (PSR) and has considered the statutory penalties, the Guidelines range, applicable caselaw and statutory law, all of the § 3553(a) factors and the balancing of those factors, and his post-sentencing conduct.[3] In light of those considerations, the Court concludes that while Defendant demonstrates "extraordinary and compelling" circumstances, he fails to establish that the § 3553(a) factors weigh in favor of release. The Court's reasons for reaching this conclusion include (1) Defendant's medical records that indicate treatment and care, (2) the seriousness and violent nature of the instant federal offenses, and (3) his extensive criminal history that involves additional significant, violent conduct and demonstrates a continued disrespect for the law and safety of others.

In balancing and analyzing the § 3553(a) factors, the Court has considered the compassionate release issues not in play at the original sentencing. *Kibble* at 335 (Gregory, C.J., concurring). This Court understands the terminal health conditions Defendant faces, and the risk of COVID in light of his condition and incarceration. Those issues, and the current circumstances of Defendant's incarceration, have been

---

[3] The Court has considered in its analysis each of the issues raised in Defendant's filings, including (1) his medical conditions independently and in light of COVID-19; (2) the First Step Act's elimination of § 924(c) "stacking"; (3) the way that the BOP is managing the pandemic and Defendant's health conditions; (4) his growth and rehabilitation efforts while incarcerated; (5) his disciplinary issues while incarcerated; (6) the portion of his sentence served; and (7) his release plan, including living arrangements and medical care.

considered in applying the following § 3553(a) factors.

In conjunction with the § 3553(a) factors, it is appropriate to highlight the facts of the instant offense and the Defendant's criminal history. Prior to the Defendant's present federal convictions for which is currently incarcerated, he was previously convicted of additional violent conduct, including two convictions for murder. In 1975, Bourque was convicted of 2nd Degree Murder and sentenced to five years imprisonment. PSR ¶ 40. While serving his sentence for 2nd Degree Murder, Defendant escaped. PSR ¶ 41. Bourque was sentenced to an additional year and three months consecutive to his original sentence. *Id.* After serving that sentence, Bourque reengaged in violent conduct, as he was convicted of Assault and Destruction of Private Property as well as Unlawful Possession of Controlled Substances in 1980, for which he received a 12-month sentence. PSR ¶ 42, 43. Finally, the Defendant was convicted of Murder for the second time in 1986 when he and two codefendants forced a victim into an apartment over an altercation regarding a motorcycle. PSR ¶ 44. The PSR notes that "the victim was forced at gunpoint into an apartment and later shot. . . the victim offered no resistance prior to being shot and killed." *Id.*  Based on his prior convictions, Defendant is in a criminal history category of IV because he is an armed career criminal. PSR ¶ 49. A review of Defendant's criminal history demonstrates his disrespect for the law and his propensity to engage in criminal activity. Defendant has an extensive criminal history for violent offenses dating back to 1975. In light of Defendant's criminal history, the Court concludes that "the history and characteristics of the defendant" weigh against release.

The Court takes notice that while Bourque was incarcerated for the instant offense, he assaulted and seriously injured a correctional officer by repeatedly stabbing the officer. ECF No. 179 at 1. He was prosecuted in the Western District of Louisiana for this conduct and was convicted of Assaulting a Federal Officer, sentenced to 200 months' imprisonment to run consecutively to the instant offense. Additionally, Bourque has been sanctioned on numerous occasions while incarcerated. This conduct indicates a lack of rehabilitation while incarcerated and weighs strongly against release.

The Court also concludes that "the nature and circumstances of the offense" weigh heavily against release. The Defendant committed the instant federal offense while on parole for his 1986 murder conviction. PSR at ¶ 46. The full facts of the instant offense are outlined in Paragraphs 7 – 15 of the PSR. The Court will not restate all the facts here but will highlight the significant details. The PSR states that on the morning of March 14, 2002, a bank in Myrtle Beach, South Carolina was robbed at gunpoint. PSR at ¶¶ 8-15. Bourque planned the robbery, drove the getaway car, and also threatened to kill his codefendant's wife and children if the codefendant refused to assist Bourque in robbing the bank. *Id.* at 10, 15. Bourque's co-defendant was the individual who entered the bank carrying an automatic firearm. *Id.* Bourque and his co-defendant were stopped by law enforcement minutes after the robbery, and Bourque reached for a gun inside the vehicle, intending to shoot the officer as he approached the getaway car. *Id.* at ¶¶ 12-13. Bourque admitted to the arresting law enforcement officer that "he had the gun with the safety off and hammer cocked, but

that he refrained from shooting the officer only because the codefendant begged Bourque not to do it." *Id.*; PSR ¶15.

In sum, Defendant has repeatedly committed violent offenses since he was 17 years old. His conduct demonstrates his disrespect for the law and his propensity to engage in criminal conduct. A review of the instant offense and Defendant's criminal history leads the Court to conclude that § 3553(a)(2)—the need for the sentence imposed—weighs against release. Defendant's sentence was and is necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from further crimes of the defendant.

As to §§ 3553(a)(3)-(4)—the Court considered the kinds of sentences available and the sentencing range established for the offense. His Guideline range for the armed bank robbery and felon in possession counts was 262 to 327 months' imprisonment. *Id.* at ¶ 81. The statutory minimum for his 924(c) conviction was 7 years' imprisonment to run consecutively to the Guidelines range for other counts, for a total range of 346 to 411 months' imprisonment. *Id.* The Court granted the Government's motion for upward departure, sentencing Bourque to a total term of imprisonment of 531 months. ECF No. 91, 92, 97, 98. As noted earlier, the Defendant was sentenced to 200 months' imprisonment to run consecutively to his sentence for the instant offense, bringing his total sentence of imprisonment to 731 months. ECF No. 179, p. 1. To date, Defendant has served 238 months, or approximately 32 percent, of that sentence. Therefore, the Court concludes that these factors also weigh against

9

release.

As to the remaining factors, the Court acknowledges that the record reflects that Defendant has made efforts to rehabilitate while incarcerated. However, that factor, balanced against the factors above, does not warrant release. Defendant committed serious, violent crimes, both the instant offenses and in the past, and he has served approximately 32 percent of his federal sentence. His rehabilitative efforts while incarcerated do not outweigh the repetitive violence and contempt for the law that he exhibited before his incarceration. More generally, it is clear that this Defendant is a violent offender, who committed violent crimes on at least three occasions. He served time for his first violent offense, and upon release, committed more violent crimes. He served time for his second violent offense, and upon release, committed more serious crimes. The violence exhibited warrants requiring Defendant to serve the sentence imposed. While the Court acknowledges Defendant's terminal medical condition, it ultimately concludes that his release is not warranted after full review of the crimes he committed and consideration of his individual circumstances.

In light of the seriousness and violent nature of the instant offenses, Defendant's criminal history that demonstrates a pattern of repeated violent conduct, and the need for the sentence imposed, the Court finds that the § 3553(a) factors weigh against a release. Accordingly, Defendant's motion, ECF No. 173, is **DENIED**.[4]

---

[4] To the extent he seeks an order directing the BOP to grant him an early release to home confinement pursuant to the CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020), the Court does not have discretion to issue such an order. See, e.g., United States v. Hendrix, No. 1:10-cr-00067-MR-WCM-2, 2020 WL 2319698, at *1 (W.D.N.C. May 11, 2020) ("The discretion to release a prisoner to home

[5]

      IT IS SO ORDERED.

*s/ Terry L. Wooten*
Terry L. Wooten
Senior United States District Judge

January 25, 2022
Columbia, South Carolina

---

confinement lies solely with the Attorney General. The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this." (citations omitted)).

[5] The Court has given careful and full consideration to the Fourth Circuit's recent per curiam opinion in *United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021), including the concurring opinions, and has applied those standards in considering this motion. It has also reviewed the Fourth Circuit's recent decision in *United States v. High*, 2021 WL 1823280 (4th Cir. May 7, 2021) and has similarly applied those standards.